IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-681

Filed 17 September 2025

Pasquotank County, No. 24CR000015-690

STATE OF NORTH CAROLINA

v.

CURTIS BRINKLEY, Defendant.

Appeal by Defendant from order entered 16 January 2024 by Judge R. Andrew Womble in Pasquotank County Superior Court. Heard in the Court of Appeals 15 January 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General G. Mark Teague, for the State.*
>
> *Sarah Holladay, for defendant-appellant.*

STADING, Judge.

Curtis Brinkley ("Defendant") appeals from the trial court's order holding him in direct criminal contempt. For the reasons below, we vacate and remand for further proceedings not inconsistent with this opinion.

## I.  Background

On 11 April 2023, Defendant entered an *Alford* plea to the charge of voluntary manslaughter.[1]  That same day, the trial court sentenced Defendant to 58 to 82 months in prison.  Despite being sentenced in April, the trial court ordered that Defendant's term of imprisonment would begin on 12 June 2023.  The trial court further ordered that if Defendant failed to report to the Albemarle District Jail ("the jail") on that date, "he shall be held under a $50,000 cash/US currency bond."

Defendant failed to report to the jail on 12 June 2023.  Consequently, the trial court issued an order for his arrest the next day.  Defendant was arrested much later, on 3 January 2024.

On 16 January 2024, the trial court conducted a summary contempt proceeding concerning Defendant's failure to report to the jail.  Defendant was not represented by counsel during this hearing.  When asked why he failed to report pursuant to the court's order, Defendant stated he "had other things going on[.]"  At the conclusion of the hearing, the trial court held Defendant in direct criminal contempt and sentenced him to an additional thirty days of imprisonment:

> THE COURT: All right. I'm going to find that [Defendant] is in direct criminal contempt of [the sentencing judge's] order by failing to report without due cause. I'm going to order that he serve an active sentence of 30 days for that direct criminal contempt. And I'm going to order that [the] 30 days run consecutively with his 58 to 82, and I'm

---

[1] *North Carolina v. Alford* permits a trial court to accept a guilty plea whereby the defendant consents to sentencing by the trial court but does not admit his guilt.  400 U.S. 25, 91 S. Ct. 160 (1970).

ordering that he serve it right now. He is in your custody,
Mr. Sheriff. Good luck to you.

On 26 January 2024, Defendant filed a *pro se* written notice of appeal concerning the trial court's direct criminal contempt order. That notice stated: "I Curtis Brinkley w[ould] like to appeal the 30 days I was giv[en] in court on the 16th." Defendant was appointed counsel for his appeal on 12 February 2024. Thereafter, by and through counsel, Defendant petitioned our Court for writ of certiorari ("PWC") on 29 August 2024.

## II. Jurisdiction

We must determine whether this Court has jurisdiction to consider Defendant's appeal in light of his PWC. Defendant filed this PWC because his written notice of appeal failed to comply with the requirements set out by the North Carolina Rules of Appellate Procedure. N.C. R. App. P. 4. For the reasons below, we grant Defendant's PWC. N.C. R. App. P. 21(a)(1); N.C. Gen. Stat. § 7A-32 (2023).

It is well-settled that "[w]ithout a proper notice of appeal, this Court does not have the jurisdiction to hear a case." *State v. Mauck*, 204 N.C. App. 583, 586, 694 S.E.2d 481, 483 (2010); *State v. Morris*, 41 N.C. App. 164, 166, 254 S.E.2d 241, 242 (1979). "Rule 4 authorizes two modes of appeal for criminal cases. The Rule permits oral notice of appeal, but only if given at the time of trial . . . . Otherwise, notice of appeal must be in writing and filed with the clerk of court." *State v. Oates*, 366 N.C. 264, 268, 732 S.E.2d 571, 574 (2012) (citations omitted). If a defendant files a written

notice of appeal, he must do so "within fourteen days after entry of the judgment or order . . . ." N.C. R. App. P. 4(a)(2). In addition, the written notice must: be served on all adverse parties within fourteen days; specify the party taking the appeal; designate the judgment or order being appealed; designate the court to which the appeal is taken; and be signed by counsel of record for the party taking the appeal. *Id.* 4(a)(2), (b).

Notwithstanding the requirements of Rule 4, "this Court possesses the authority to grant a petition for writ of *certiorari* and review an order or judgment entered by the trial court 'when the right to prosecute an appeal has been lost by failure to take timely action[.]'" *State v. Salter*, 264 N.C. App. 724, 729, 826 S.E.2d 803, 807 (2019) (quoting N.C. R. App. P. 21(a)(1)). "Our precedent establishes a two-factor test to assess whether certiorari review by an appellate court is appropriate. First, a writ of certiorari should issue only if the petitioner can show 'merit or that error was probably committed below.'" *Cryan v. Nat'l Council of Young Men's Christian Ass'ns of U.S.*, 384 N.C. 569, 572, 887 S.E.2d 848, 851 (2023) (quoting *State v. Ricks*, 378 N.C. 737, 741, 862 S.E.2d 835, 839 (2021)). And "[s]econd, a writ of certiorari should issue only if there are 'extraordinary circumstances' to justify it." *Cryan*, 384 N.C. at 572–73, 887 S.E.2d at 851 (quoting *Moore v. Moody*, 304 N.C. 719, 720, 285 S.E.2d 811 (1982)). A showing of extraordinary circumstances is necessary because, "[i]f courts issued writs of certiorari solely on the showing of some error below, it would 'render meaningless the rules governing the time and manner of

noticing appeals.'" *Cryan*, 384 N.C. at 572–73, 887 S.E.2d at 851 (quoting *Ricks*, 378 N.C. at 741, 862 S.E.2d at 839). Although "[t]here is no fixed list of 'extraordinary circumstances' that warrant certiorari review, . . . this factor generally requires a showing of substantial harm, considerable waste of judicial resources, or 'wide-reaching issues of justice and liberty at stake.'" *Cryan*, 384 N.C. at 573, 887 S.E.2d at 851 (citation omitted). Extraordinary circumstances may also manifest where resolution of the matter is "in the interest of 'judicial economy.'" *Id.* (citation omitted). "Ultimately, the decision to issue a writ of certiorari rests in the sound discretion of the presiding court." *Cryan*, 384 N.C. at 573, 887 S.E.2d at 851 (citing *Ricks*, 378 N.C. at 740, 862 S.E.2d at 838).

Here, Defendant concedes—and we agree—that his written notice of appeal failed to comply with N.C. R. App. P. 4. For example, Defendant's written notice failed to designate the court to which he was taking his appeal and failed to indicate whether the notice had been served on the State. Yet, "this Court has noted that failure to serve the State and identify the court to which the appeal is taken 'are not the sorts of defects requiring dismissal of an appeal on a jurisdictional basis.'" *State v. Hammond*, 288 N.C. App. 58, 62, 884 S.E.2d 767, 770 (2023) (quoting *State v. Baungartner,* 273 N.C. App. 580, 583, 850 S.E.2d 549, 551 (2020)). Despite his noncompliance with Rule 4, Defendant's PWC satisfies the standard set out in *Cryan*. 384 N.C. at 572–73, 887 S.E.2d at 851. Accordingly, we grant Defendant's PWC and proceed with our review on the merits.

## III. Analysis

Defendant asserts the trial court committed error by finding him in direct criminal contempt because the alleged conduct did not occur in proximity to a judicial official or courtroom and did not disrupt any court proceeding. He also contends that he cannot be held in indirect criminal contempt because the proceedings below failed to comply with statutory requirements.

## A. Standard of Review

"In general, our standard of review for contempt cases is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *State v. Robinson*, 281 N.C. App. 614, 619, 868 S.E.2d 703, 708 (2022) (citations and quotation marks omitted). "Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary. The trial court's conclusions of law drawn from the findings of fact are reviewable *de novo*." *State v. Wendorf*, 274 N.C. App. 480, 483, 852 S.E.2d 898, 902 (2020) (citation omitted and emphasis added). "We review a trial court's compliance with the contempt statutes *de novo*, considering the matter anew and freely substituting our judgment for the lower court's judgment." *Robinson*, 281 N.C. App. at 620, 868 S.E.2d at 708; *State v. Perkinson*, 271 N.C. App. 557, 559, 844 S.E.2d 336, 337 (2020) ("Whether a trial court violated N.C. Gen. Stat. § 5A-14 is an issue of law reviewed *de novo* as a violation of a statutory mandate.").

## B. Direct and Indirect Criminal Contempt

Defendant first contends that the trial court committed error by holding him in direct criminal contempt for his failure to report to the jail. Defendant maintains this act is not direct criminal contempt because it occurred outside the presence of the courtroom, its officials, or any proceeding. *See* N.C. Gen. Stat. § 5A-13(a)(1)–(3) (2023). In addition, Defendant submits that because his failure to report is not direct criminal contempt, the trial court erred by "conducting a summary contempt proceeding . . . ." *See id.* §§ 5A-13(b), 5A-14 (2023).

N.C. Gen. Stat. § 5A-11(a)(1)–(10) (2023) provides twelve grounds that constitute criminal contempt. *In re Korfmann*, 247 N.C. App. 703, 707, 786 S.E.2d 768, 770 (2016) ("[Section] 5A-11 provides a list of conduct that constitutes criminal contempt."). Relevant here, a defendant's "[w]illful disobedience of, resistance to, or interference with a court's lawful process, order, directive, or instruction or its execution" constitutes criminal contempt. N.C. Gen. Stat. § 5A-11(a)(3); *State v. Simon*, 185 N.C. App. 247, 251, 648 S.E.2d 853, 856 (2007).

In addition, section 5A-13 provides that there are two types of criminal contempt—direct and indirect. *See* N.C. Gen. Stat. § 5A-13 ("Direct and indirect criminal contempt; proceedings required."). An act constitutes direct criminal contempt if it: "(1) Is committed within the sight or hearing of a presiding judicial official; and (2) Is committed in, or in immediate proximity to, the room where proceedings are being held before the court; and (3) Is likely to interrupt or interfere

with matters then before the court." *Id.* § 5A-13(a)(1)–(3). "Any criminal contempt other than direct criminal contempt is indirect criminal contempt . . . ." *Id.* § 5A-13(b). "Indirect contempt ([section] 5A-13(b)) is that which arises from matters not occurring in or near the presence of the court, but which tend to obstruct or defeat the administration of justice." *Atassi v. Atassi*, 122 N.C. App. 356, 361, 470 S.E.2d 59, 62 (1996).

When a defendant's act constitutes direct criminal contempt, "[t]he presiding judicial official may punish summarily . . . according to the requirements of G.S. 5A-14 or may defer adjudication and sentencing as provided in G.S. 5A-15." N.C. Gen. Stat. § 5A-13(a); *e.g., State v. Land*, 273 N.C. App. 384, 393, 848 S.E.2d 564, 570 (2020). To summarily impose punishment for direct criminal contempt, the presiding judicial official must adhere to the following procedures:

> (a) The presiding judicial official may summarily impose measures in response to direct criminal contempt when necessary to restore order or maintain the dignity and authority of the court and when the measures are imposed substantially contemporaneously with the contempt.
>
> (b) Before imposing measures under this section, the judicial official must give the person charged with contempt summary notice of the charges and a summary opportunity to respond and must find facts supporting the summary imposition of measures in response to contempt. The facts must be established beyond a reasonable doubt.

N.C. Gen. Stat. § 5A-14(a)–(b).

But if a defendant's act constitutes indirect criminal contempt, the judicial official must proceed "in accordance with the procedure required by G.S. 5A-15." *Id.* § 5A-13(b). "Indirect criminal contempt must be enforced through plenary proceedings. Plenary proceedings for contempt require the trial court to first issue a show cause order and subsequently hold a show cause hearing." *State v. Gonzalez*, 278 N.C. App. 302, 305, 862 S.E.2d 427, 430 (2021) (internal citation omitted). "[A] show cause order is analogous to a criminal indictment and is the means by which the defendant is afforded the constitutional safeguard of notice." *State v. Coleman*, 188 N.C. App. 144, 149, 655 S.E.2d 450, 453 (2008). The critical question here is whether Defendant's failure to report as ordered "constitute[s] direct or indirect criminal contempt." *Cox v. Cox*, 92 N.C. App. 702, 706, 376 S.E.2d 13, 16 (1989).

The trial court—without issuing a show cause order—summarily held Defendant in direct criminal contempt because he "fail[ed] to report as ordered . . . for his active sentence." We note that Defendant's willful failure to comply with the trial court's prior order constitutes an act of criminal contempt. *See Simon*, 185 N.C. App. at 251, 648 S.E.2d at 856 (quoting N.C. Gen. Stat. § 5A-11(a)(3)) ("[C]riminal contempt includes '[w]illful disobedience of, resistance to, or interference with a court's lawful process, order, directive, or instruction or its execution.'"). Here, Defendant's failure to report occurred outside the presence of the court. N.C. Gen. Stat. § 5A-13(a)(2); *e.g., Ingle v. Ingle*, 18 N.C. App. 455, 457, 197 S.E.2d 61, 62 (1973) ("Failure to comply with a prior court order would amount to an

act committed outside the presence of the court, at a distance from it, which tends to degrade the court or interrupts, prevents or impedes the administration of justice and would be classified an indirect contempt."). Additionally, Defendant's failure to comply did not occur during "any matters then before the court" and did not occur "within the sight or hearing of a presiding judicial official." N.C. Gen. Stat. § 5A-13(a)(1), (3).

As the State concedes, Defendant's failure to report to the jail is not direct criminal contempt as set out in N.C. Gen. Stat. § 5A-13(a)(1)–(3). Defendant's act is more appropriately characterized as indirect criminal contempt. *See id.* § 5A-13(b) ("Any criminal contempt other than direct criminal contempt is indirect criminal contempt and is punishable only after proceedings in accordance with the procedure required by G.S. 5A-15."); *see also Cox*, 92 N.C. App. at 707, 376 S.E.2d at 17 ("Our reading . . . leads us to the conclusion that defendant Cox's failure to appear at the show cause hearing must be classified as indirect criminal contempt."). Since Defendant's act constitutes indirect criminal contempt, the trial court erred by conducting summary proceedings under N.C. Gen. Stat. § 5A-14. *See Cox*, 92 N.C. App. at 707, 376 S.E.2d at 17 (holding that the defendant "was entitled to a hearing pursuant to G.S. secs. 5A-13(b) and 5A-15" and that "the judgment against him should have been supported by facts established beyond a reasonable doubt" under G.S. 5A-15(f).).

Accordingly, we vacate the trial court's order and remand for further proceedings under sections 5A-13(b) and 5A-15. *See Cox,* 92 N.C. App. at 707, 376 S.E.2d at 17 (vacating and remanding pursuant to N.C. Gen. Stat. §§ 5A-13(b) and 5A-15 after the trial court summarily punished the defendant for direct criminal contempt because his conduct was more appropriately classified as indirect criminal contempt*).*

## C. Conversion to Indirect Criminal Contempt

Defendant next asks us to determine whether his conviction for direct criminal contempt can be converted to a judgment for indirect criminal contempt on appeal. Defendant maintains that his conviction cannot be converted given that the trial court failed to adhere to the procedures for indirect criminal contempt as set out in N.C. Gen. Stat. § 5A-15 ("Plenary proceedings for contempt"). We decline further review in light of our resolution of the matter above.

## IV. Conclusion

For the reasons above, we hold that the trial court erroneously held Defendant in direct criminal contempt. Consequently, we vacate the trial court's order and remand for proceedings not inconsistent with this opinion.

VACATED AND REMANDED.

Judges ARROWOOD and COLLINS concur.