**STATE v. OKWARA**

[223 N.C. App. 166 (2012)]

STATE OF NORTH CAROLINA v. CHIEGE OKWARA

No. COA12-330

(Filed 16 October 2012)

## 1. Contempt—criminal contempt—willful violation of Rape Shield Statute

The trial court did not err in a criminal contempt case by finding defendant, the defense attorney in a rape case, guilty of criminal contempt. Defendant's question of the prosecuting witness about a possible prior instance of rape between the witness and her cousin, without first addressing the relevance and admissibility of that question during an *in camera* hearing, constituted competent evidence to support the trial court's finding that defendant violated the Rape Shield Statute. Further, the trial court's conclusion that defendant was willfully and grossly negligent was supported by the findings, which were supported by competent evidence.

## 2. Appeal and Error—preservation of issues—failure to file notice of appeal

Defendant failed to preserve for appellate review her challenge to the decision of Judge Bridges to deny her motion to recuse Judge Ervin where defendant failed to file a notice of appeal from that order. Defendant's argument was dismissed.

## 3. Appeal and Error—preservation of issues—failure to file notice of appeal

Defendant failed to preserve for appellate review her challenge to a show cause order where defendant failed to file a notice of appeal from that order. Defendant's argument was dismissed.

Appeal by Defendant from order entered 6 May 2011 and judgment entered 11 August 2011 by Judge Robert C. Ervin in Mecklenburg County Superior Court. Heard in the Court of Appeals on 26 September 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Laura E. Parker, for the State.*

*Turrentine Law Firm, PLLC, by Karlene S. Turrentine, for Defendant.*

STEPHENS, Judge.

*Procedural History and Factual Background*

Defendant Chiege Okwara ("Ms. Okwara") appeals the order of the Honorable Robert C. Ervin, Superior Court Judge presiding, which found her in contempt of court for willfully disobeying a court order and the judgment subsequently entered by Judge Ervin, imposing censure for her contempt. Judge Ervin's decision followed an exchange during the 13 December 2010 criminal session of Mecklenburg County Superior Court, occurring between Ms. Okwara, who was serving as court-appointed defense counsel for Mr. Latron Marquay Hoover ("Mr. Hoover"), and the prosecuting witness in that matter, Ms. Latasha Ward ("Ms. Ward").

Mr. Hoover had been charged with the rape of Ms. Ward and, in anticipation of his court appearance, Ms. Okwara filed a 17 March 2010 motion for a private, *in camera* hearing for the purpose of "determin[ing] the admissibility of evidence . . . of the sexual behavior of [Ms. Ward]." In support of that request, Ms. Okwara cited to the North Carolina General Statutes, sections 8C-1, Rule 412, and 15A-952(f). The hearing occurred on Monday, 13 December 2010, at which time Ms. Okwara questioned Ms. Ward about her sexual relationship with Mr. Hoover. At the end of the hearing, Judge Ervin informed Ms. Okwara that she was permitted "to question [Ms. Ward] as to whether she [had] engaged in any sexual behaviour [sic] with the defendant during cross-examination of the State's case." Ms. Okwara responded with the statement: "I guess as far as the—that's fine. That impeachment evidence will come in on cross-examination."

Two days later, 15 December 2010, during her cross-examination of Ms. Ward, Ms. Okwara asked: "Do you remember telling [the prosecutor] you had been raped by your cousin when you were fifteen?" The prosecutor objected to the question, the objection was sustained, Ms. Ward answered "Yes," and the court instructed the jury to disregard her answer. After the court took its morning recess, the prosecutor requested that Ms. Okwara be held in contempt of court for her question concerning a sexual encounter between Ms. Ward and her cousin, in violation of both Rule 412 of the North Carolina Rules of Evidence ("the Rape Shield Statute" or "the Statute") and Judge Ervin's order. Ms. Okwara denied intentionally violating the rule and stated that she intended the question solely for impeachment purposes. At that point, the court recessed and took the matter under advisement in order to clarify its understanding of the record.

On 8 February 2011, in response to the exchange between Ms. Okwara and Ms. Ward, Judge Ervin issued an order to show cause, mandating that Ms. Okwara appear before him to determine whether she should be held in criminal contempt. On 9 March 2011, Ms. Okwara responded to the show cause order with a motion to recuse Judge Ervin from conducting the proceedings. Five days later, on 14 March 2011, following a hearing, that motion was denied by the Honorable Forrest D. Bridges ("Judge Bridges"), who found that there was "no indication whatsoever of lack of objectivity" on the part of Judge Ervin. Ms. Okwara then appeared before Judge Ervin on 8 April 2011 for the mandated contempt hearing. On 6 May 2011, Judge Ervin issued an order finding that Ms. Okwara was guilty of contempt of court because of (1) her "willful disobedience of a court's lawful order or directive or its execution" and (2) the "willful and grossly negligent failure of an officer of the court to perform her duties in an official transaction."

Judge Ervin then scheduled an additional hearing for the purpose of determining punishment. After that hearing, in its 11 August 2011 judgment, the court determined that Ms. Okwara should be censured for (1) her "willful disobedience of a court's lawful order or directive or its execution" and (2) the "willful and grossly negligent failure by an officer of the court to perform her duties in an official transaction." Ms. Okwara appeals both the order and final judgment.

### Standard of Review

In a contempt proceeding, we review the determination of a trial court by asking "whether there is competent evidence to support the [court's] findings of fact and whether the findings support the conclusions of law." *Hartsell v. Hartsell*, 99 N.C. App. 380, 385, 393 S.E.2d 570, 573 (1990) (internal quotation marks and citations omitted). "Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment." *Id.* (citing *Mauney v. Mauney*, 268 N.C. 254, 257, 150 S.E.2d 391, 394 (1966)).

### Discussion

**[1]** Ms. Okwara raises three issues in her brief on appeal.[1] In the first, she contends that her question to Ms. Ward did not violate the

---

1. In addition to these three issues, Ms. Okwara lists in her brief numerous "Assignments of Error." Assignments of Error are no longer recognized by the North

Rape Shield Statute or, in the alternative, that Ms. Okwara should not be found in contempt of court because she did not violate the Statute willfully. Ms. Okwara also contends in this first issue that her question was proper because it sought evidence that was "extremely relevant and pertinent, of high probative value, and . . . admissible no matter what the underlying charges were against Mr. Hoover." Thus, Ms. Okwara initially argues, "the trial court's findings and conclusions are unsupported by *any* evidence and its orders of contempt and censure must be overturned." We disagree.

The North Carolina Rape Shield Statute, Rule 412 of the North Carolina Rules of Evidence, states that in trials resulting from charges of rape or a sex offense "no reference to [sexual] behavior may be made in the presence of the jury and no evidence of this behavior may be introduced at any time during the trial" unless the court determines in an *in camera* hearing that such a reference is relevant. N.C. Gen. Stat. § 8C-412(d) (2011). If the proponent of sexual behavior evidence desires to produce that evidence, she or he must apply for an *in camera* hearing either prior to or during the trial. *Id.* In addition, the sexual behavior of the complainant (here, Ms. Ward) is considered irrelevant to the case unless that behavior:

(1) Was between the complainant and the defendant; or

(2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant; or

(3) Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented; or

(4) Is evidence of sexual behavior offered as the basis of expert psychological or psychiatric opinion that the complainant fantasized or invented the act or acts charged.

N.C. Gen. Stat. § 8C-412(b).

---

Carolina Rules of Appellate Procedure. Thus, pursuant to Rule 28(a) of the North Carolina Rules of Appellate Procedure, we will only address those arguments that are specifically discussed in Ms. Okwara's brief. N.C.R. App. P. 28(a)("Issues not presented and discussed in a party's brief are deemed abandoned.").

In this case, Ms. Okwara did not petition the trial court for an *in camera* hearing on the admissibility of the question at issue. She now argues that her question was proper despite that failure because of the high probative value of the evidence sought by the question and because it may have referred to a false accusation, as opposed to a true memory, on the part of Ms. Ward. We need not address the merit of those arguments here. In either circumstance, Ms. Okwara's failure to initially address the question in an *in camera* hearing, before asking that question in front of the jury, violates the plain language of the Statute. When evidence refers to the sexual behavior of the complainant in a case resulting from a charge of rape or a sex offense, then an *in camera* hearing is required. In this case, Ms. Okwara asked Ms. Ward about a possible prior instance of rape between Ms. Ward —the complainant—and her cousin, without first addressing the relevance and admissibility of that question during an *in camera* hearing. This constitutes competent evidence to support the trial court's finding that Ms. Okwara violated the Rape Shield Statute, and we affirm that decision.

In the alternative, Ms. Okwara argues that she did not intentionally violate the Rape Shield Statute and, thus, should not be found guilty of criminal contempt. We again disagree.

In order to be found guilty of criminal contempt, an individual must act willfully or with gross negligence. *See* N.C. Gen. Stat. § 5A-11(a) (2011). In the context of contempt proceedings, this Court has previously defined a willful act as one "done deliberately and purposefully in violation of law, and without authority, justification, or excuse." *State v. Phair*, 193 N.C. App. 591, 594, 668 S.E.2d 110, 112 (2008) (internal quotation marks and citations omitted). Gross negligence has been interpreted in contempt proceedings to imply "recklessness or carelessness that shows a thoughtless disregard of consequences or a heedless indifference to the rights of others." *State v. Chriscoe*, 85 N.C. App. 155, 158, 354 S.E.2d 289, 291 (1987) (citing *State v. Boyd*, 61 N.C. App. 238, 300 S.E.2d 578 (1983)).

In its 6 May 2011 order, determining that Ms. Okwara's actions were willful or grossly negligent, the trial court made a number of findings that we find persuasive and supported by competent evidence in this matter. First, the court highlighted the exchange between Ms. Okwara and Judge Ervin at the conclusion of the 13 December 2010 voir dire hearing. During that hearing, requested by Ms. Okwara pursuant to the terms of the Rape Shield Statute, the court informed her that it "would be inclined having heard the evi-

dence to permit the defense to question [Ms. Ward] as to whether she has engaged in any sexual behaviour [sic] with the defendant during cross-examination of the State's case." When the court asked Ms. Okwara if she sought any evidence beyond this, she responded "I guess as far as the—that's fine."

Second, despite the above exchange, the trial court noted in its 6 May 2011 order that Ms. Okwara never "sought to explain her failure to comply with [Rule 412]" or even address her violation of the Rule, even though she asked Ms. Ward about a possible sexual relationship with her cousin in front of the jury and in violation of the Statute. Rather, Ms. Okwara maintained the position that "the question she asked sought to elicit admissible evidence."

Third, the trial court determined that the 13 December 2010 exchange between Judge Ervin and Ms. Okwara, which occurred at the conclusion of the voir dire hearing, constituted a "directive or instruction of the court to the defendant," which the defendant had disobeyed by asking a clearly impermissible question under the Statute. Thus, the trial court determined that Ms. Okwara had "failed to comply with the requirements of [the Rape Shield Statute] in that she made reference to sexual behavior in the presence of the jury prior to obtaining a determination of the relevance of that evidence" and, because of that, failed as an officer of the court to perform her duties. That failure, the court noted, would be sufficient to constitute criminal contempt if it were found to be willful or grossly negligent.

Fourth, on the subject of willfulness or gross negligence, the court acknowledged the North Carolina Pattern Jury Instructions on intent, which state that:

> Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred. You arrive at the intent of a person by such just and reasonable deductions from the circumstances proven as a reasonably prudent person would ordinarily draw therefrom.

N.C. Pattern Jury Instructions, Crim. § 120.10 (2012); *see also State v. Bell*, 285 N.C. 746, 750, 208 S.E.2d 506, 508 (1974) ("Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred."). In support of its inference that Ms. Okwara "was certainly aware of the provision of [the Rape Shield Statute]," the trial court specified that "[Ms. Okwara] had filed a motion pursuant to [the Rape Shield Statute] ear-

lier in the proceedings . . . and had participated in a voir dire hearing that resulted from her earlier motion."[2]

Fifth, the court found as a substantive point that Ms. Okwara "certainly had knowledge of the requirements of [the Rape Shield Statute]," noting that she had "yet to recognize her obligation to comply with the provisions of [the Rape Shield Statute] or her failure to do so" and concluding that, together, these findings were sufficient evidence for the court to determine that Ms. Okwara "has manifested that she acted knowingly and of a stubborn purpose. . . . [and her] conduct was willfully contemptuous." As a result, the court determined Ms. Okwara had "demonstrated carelessness reflecting a thoughtless disregard for the consequences and a heedless indifference to Ms. Ward's rights in this instance" and, thus, "[Ms. Okwara] is guilty of criminal contempt for the grossly negligent failure to perform her duties as an officer of the court in an official transaction."·

The record before this Court establishes that these findings are supported by competent evidence and, when taken together, are sufficient to justify the trial court's conclusion. Therefore, we affirm the trial court's determination that Ms. Okwara's violation· of the Statute was willful and grossly negligent and, thus, that she is guilty of criminal contempt of court.

[2] In the second issue Ms. Okwara raises in her brief, she makes three additional sub-arguments.[3] Ms. Okwara argues that the trial court abused its discretion and committed plain and reversible error:[4] (1) in failing to recuse itself from the contempt proceedings;

---

2. The trial court also observed that:

> The defendant's conduct and subsequent arguments in this litigation ignore the Court's role in safeguarding [the victim's interests under the Statute] and instead demonstrate an attitude that the defendant herself as counsel for Mr. Hoover was entitled to determine whether the question at issue should be asked without necessity for an in camera hearing.

3. Though Defendant-Appellant refers to a fourth point in the heading of her argument for the second issue—that the trial court erred in determining that it had given Ms. Okwara sufficient notice of her peril—she does not discuss that point in the contents of her brief. Thus, pursuant to Rule 28(a) of the North Carolina Rules of Appellate Procedure, that argument is deemed abandoned, and we will not address it here. N.C.R. App. P. 28(a)("Issues not presented and discussed in a party's brief are deemed abandoned.").

4. As is discussed in the *Standard of Review* section, *supra*, the standard of review in contempt proceedings is not abuse of discretion or plain error. Rather, we ask whether a trial court's findings of fact were based on competent evidence sufficient to support the court's conclusions of law.

(2)(a) in finding that there was no evidence of lack of objectivity on the part of Judge Ervin, (b) by determining that the show cause order should not be returned before a judge other than Judge Ervin, and (c) by denying Ms. Okwara's motion to recuse Judge Ervin; and (3) in finding that Ms. Okwara proved her willful intent to disobey the court by defending herself.

Because neither Ms. Okwara nor her trial counsel ("Mr. Osho") challenged the decision of Judge Bridges either at the end of the 10 March 2011 recusal hearing or in her notice of appeal, we lack jurisdiction to review these arguments. "A person found in criminal contempt may appeal in the manner provided for appeals in criminal actions[.]" N.C. Gen. Stat. § 5A-17 (2011). In criminal cases, the appellant must either (1) "give[] oral notice of appeal at trial, or (2) fil[e] notice of appeal with the clerk of superior court[.]" N.C.R. App. P. 4(a). In the latter circumstance, the appellant's notice of appeal must "designate the judgment or order from which appeal is taken[.]" N.C.R. App. P. 4(b).

In this case, we find no evidence that Ms. Okwara sought to appeal the 10 March 2011 order of Judge Bridges denying her motion for recusal of Judge Ervin. Nowhere in the transcript of that hearing did Mr. Osho give oral notice of his intent to appeal the decision of Judge Bridges. In addition, when asked by Judge Bridges about whether he would prefer to have Judge Ervin or another judge decide the case, Mr. Osho commented, "It doesn't matter to me. Whatever the Court's ruling is, we comply with that ruling." Lastly, Ms. Okwara did not request that this Court review the trial court's 10 March 2011 decision in her written notice of appeal. Instead, Ms. Okwara only requested that this Court review "the Contempt Order entered by the Honorable Judge Robert C. Ervin . . . entered . . . on May 6, 2011, as well as the Final Judgment which censured and /or recommended that the defendant be censured as a result of the aforementioned criminal contempt conviction[.]"

"[W]hen a defendant has not properly given notice of appeal, this Court is without jurisdiction to hear the appeal." *State v. McCoy*, 171 N.C. App. 636, 638, 615 S.E.2d 319, 320 (2005); *see also Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 197, 657 S.E.2d 361, 364–65 (2008) ("It is axiomatic that courts of law must have their power properly invoked by an interested party. . . . The appellant's compliance with the jurisdictional rules governing the taking of an appeal is the linchpin that connects the appellate division with the trial division and confers upon the appellate court the authority to act

in a particular case."). Thus, we dismiss Ms. Okwara's arguments concerning the results of the recusal hearing on 10 March 2011 for lack of jurisdiction.

**[3]** In the third issue Ms. Okwara raises in her brief, she argues that "this Court must reverse the [trial court's] Show Cause Order entered February 8, 2011," because that order was entered by Judge Ervin "while he was neither residing in nor assigned to Mecklenburg County, without Defendant's agreement," and, thus, the "order is 'null and void and of no legal effect.' " In this circumstance, again, we do not have jurisdiction to address Ms. Okwara's argument. There is no evidence in any of the transcripts that either Ms. Okwara or Mr. Osho orally sought to appeal the validity of Judge Ervin's show cause order. In addition, the show cause order is not mentioned in Ms. Okwara's 15 August 2011 notice of appeal. Thus, pursuant to North Carolina Rules of Appellate Procedure 4(a)–(b), this issue is likewise dismissed for lack of jurisdiction.

Lastly, it should be noted that the issue of censure is not directly addressed in the contents of Ms. Okwara's brief, despite the fact that she requested review of that order in her notice of appeal. Though censure is broadly referenced on a number of occasions in the brief, which asserts that the 11 August 2011 censure judgment should be overturned, it discusses neither the merits of Judge Ervin's judgment nor whether a different punishment would have been more appropriate. Thus, pursuant to Rule 28(a) of the North Carolina Rules of Appellate Procedure, this issue is deemed abandoned, and we will not address it here. N.C.R. App. P. 28(a).

Accordingly, the trial court's 6 May 2011 order and 11 August 2011 judgment are affirmed.

AFFIRMED in part; DISMISSED in part.

Judges CALABRIA and ELMORE concur.